72    SUPREME COURT OF MISSOURI,

State ex rel. C. & A. Ry. Co. v. Public Service Com.

THE STATE ex rel. CHICAGO & ALTON RAIL-
    WAY COMPANY v. PUBLIC SERVICE ·COM-
    MISSION et al.

In Banc, June 13, 1918.

1. **RAILROADS: Signal Crossings and Gates: Do Not Include Inter-
    locking Plant.** A contract made by a railroad company which was
    about to construct its tracks across those of an existing railroad
    belonging to another company, by which the junior company agreed'
    to pay the entire costs of "crossing-signals or gates" thereafter at
    any time necessary to be erected and maintained, is not an agree-
    ment to pay the costs of erecting an "interlocking plant" at the
    crossing, since the words "crossing signals or gates" do not include
    an "interlocking plant;" and hence an order of the Public Service
    Commission, made upon the petition of the junior company, direct-
    ing the installation of an interlocking plant and requiring the older
    company to pay a part of the cost, does not impair the obligation
    of such contract.

2. ————: **Interlocking Plant: Apportionment of Costs: Train Basis:
    Unreasonable Order.** Although the portion of the costs of erect-
    ing and maintaining an interlocking plant apportioned to appel-
    lant is somewhat too large if based alone on the average number
    of trains of each of two railroads daily passing the crossing, yet
    if the evidence before the Public Service Commission reveals
    that at least two items were considered in arriving at the ap-
    portionment, namely, economy of crossing operation and safety,
    and the evidence concerning the proper items to be considered
    in apportioning the costs was not fully developed, and a true
    solution will of necessity depend upon many items not disclosed,
    the court will not rule that the apportionment made by the Com-
    mission was unreasonable.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,*
                            Judge.

AFFIRMED.

*Charles M. Miller* for appellant.

(1) . The Public Service Commission erred in ap-
portioning, under the contract between the two rail-
road companies, any part of the cost of construction,

operation, and maintenance, of the interlocking plant against the Alton Company, and the circuit court also erred in affirming the order of the Public Service Commission. Caldwell v. Layton, 44 Mo. 220; Bradshaw v. Bradbury, 64 Mo. 334; Pavey v. Burch, 3 Mo. 447; Davis & Rankin v. Hendrix, 59 Mo. App. 444; County of Johnson v. Wood, 84 Mo. 489; Carney v. Chillicothe W. & L. Co., 76 Mo. App. 536; Sachleben v. Wolfe, 61 Mo. App. 28; Stock Food Co. v. Bridges, 160 Mo. App. 122; Belch v. Miller, 32 Mo. 387; Lumber Co. v. Dent, 151 Mo. App. 614; Patterson v. Camden, 25 Mo. 13; Leonard v. C. & A. Ry. Co., 54 Mo. App. 293. (2) The order of the Public Service Commission impairs the contract between the two railroad companies and takes its property without due process of law, contrary to Sections 15 and 30 of Article 2 of the Constitution of Missouri, and Section 1, Article 14, of the Amendments to the Constitution of the United States.

*J. W. Jamison* for respondent, Missouri, Kansas & Texas Railway Company.

(1) The proposed interlocking plant at the crossing of the two lines of railroad, consisting of numerous switches, derails, facing point locks, home signals and dwarf signals, with pipe connections mounted on anti-friction pipe carriers, the turns and angles in the pipe line to be made with rocker shafts, deflecting bars and cranks; pipe carriers to be of concrete equipped with iron tops; dwarf signals, home signals and electric distant signals to be mounted on iron masts; all signals to be mounted on well-designed, substantial concrete foundations; tract battery and signal battery to be housed in substantial concrete battery boxes; the tower for housing of the interlocking machine to be two stories high; tower to be made of monolithic concrete construction, etc.; interlocking machine to be located in the second story, etc., was not a "crossing signal "within the meaning of the old contract between the M. K. & T. Railway Company and appellant.

Grand Trunk Ry. v. Indiana Railroad Comm., 221 U. S. 400. (2) The order of the Public Service Commission, ordering the interlocker, and apportioning the cost thereof on an equitable basis as between the two lines of railroad, does not impair the provisions of the contract relied on by appellant, nor does it take appellant's property without due process of law, contrary to any provision of the Constitution of Missouri, or of the Federal Constitution. State ex rel. M. K. & T. Ry. v. Public Service Comm., 221 Mo. 270; State ex rel. Wabash v. Public Service Comm., 271 Mo. 270; Tranbarger v. Chichago & Alton Ry. Co., 250 Mo. 46; Chichago & Alton Ry. Co. v. Tranbarger, 238 U. S. 67.

*Alex Z. Patterson,* General Counsel, *James D. Lindsay,* Assistant Counsel for respondent, Public Service Commission.

(1) The Public Service Commission has complete and exclusive power to prescribe the manner of crossing of one railroad by another railroad, and to require the installation, operation and maintenance of appropriate safety and other devices and appliances, including interlocking plants by railroads, and to determine and apportion the cost thereof. Sections 50 and 116, Public Service Act; State ex rel. M., K. & T. Ry. Co. v. Public Service Commission, 271 Mo. 270. (2) The power to require the installation of an interlocking plant at the crossing of one railroad by another railroad, and to apportion the cost between them, in an exercise of the delegated legislative power, which is independent of and unhampered by contracts between the companies concerned. It is compulsive and coercive in its nature, and in no wise contractual. State ex rel. M., K. & T. Ry. v. Public Service Commission, 271 Mo. 270; Grank Trunk Ry. v. Indiana Railroad Commission, 221 U. S. 400; Railroad v. Minneapolis, 232 U. S. 430; American Tobacco Co. v. St. Louis, 247 Mo. 433; Northern Pacific Railway v. Duluth, 208 U. S. 583. (3) The subject-matter of the contract upon

VOL. 275,     APRIL TERM, 1918.     75

State ex rel. C. & A. Ry. Co. v. Public Service Com.

which appellant relies, is one of a public nature and of public service. By the Public Service Commission Act, it has been withdrawn from the possession and power of the railroad companies as a subject they may control by a contract between themselves. The contract, not having been executed by the parties before the State chose to act in the premises, has no longer a legal existence. The subject-matter of it has been destroyed by the Public Service Act. Therefore, it is unenforcible. L. & N. Railway Company v. Mottley, 219 U. S. 467. (4) The Legislature gave to the Public Service Commission exclusive jurisdiction over the entire subject of railroad crossings and construction of interlockers, but gave it no jurisdiction whatever to consider, to construe or to enforce contracts in respect of that subject, and a legislative attempt to grant the last named power would have been unconstitutional and futile. Lusk v. Atkinson, 268 Mo. 109; State ex rel. Mo. South R. R. Co. v. Public Service Com., 259 Mo. 704. (5) The order does not impair the obligation of the contract between the two companies, nor take appellant's property without due process of law in violation of any provision of State or Federal Constitution, because: (a) The order concerns the public safety, and the power of the State over that subject cannot be limited by the contracts of private interests on the same subject. (b) The obligation has failed by reason of this infirmity of subject-matter and of parties. (c) The contract was entered into subject to the unabridged police power of the State, peculiarly applicable to the subject in hand—the crossing of two public highways. (d) The obligation of such contract was conditional and could not extend to the defeat of or inference with, action by the State, on that subject. State ex rel. M. K. & T. Ry. v. Public Service Commission, 271 Mo. 270; Grand Trunk Ry. Co. v. Indiana Commission, 221 U. S. 400; Louis. & Nash. R. R. Co. v. Mottley, 219 U. S. 467; Milwaukee Elec. Ry. & L. Co. v. Commission, 238 U. S. 174; Mo. Pac. Ry. Co. v. Omaha, 235 U. S. 121; North. Pac. Ry. v. Duluth, 208 U. S. 583;

Addyston Pipe & Steel Co. v. United States, 175 U. S. 229; Scranton v. Wheeler, 179 U. S. 162; Atlantic Coast Line R. R. Co. v. Riverside Mills, 219 U. S. 202; Atlantic Coast Line R. R. Co. v. City of Goldsboro, 232 U. S. 558.

WILLIAMS, J.—The proceeding which forms the basis of this review was originally instituted before the Public Service Commission by the Missouri, Kansas & Texas Railway Company, wherein the Public Service Commission was asked to make an order requiring the construction of an interlocking plant at the crossing at North Jefferson, Missouri, of the tracks of the Missouri, Kansas and Texas Railway Company and of the Chicago & Alton Railway Company, and further that the Commission apportion the cost of construction, maintenance and operation of said interlocking plant between the two railway companies. After a hearing, the Public Service Commission ordered an installation of the interlocking plant, the estimated cost of which was $9624, and ordered that the cost of construction, together with the cost of maintenance and unkeep, be appropriated as follows:

To the Missouri, Kansas & Texas Railway Company, 71.4% thereof; to the Chicago & Alton Railway Company 28.6% thereof.

Upon *certiorari*, at the instance of the Chicago & Alton Railway Company, the order of the Public Service Commission was reviewed and affirmed by the circuit court of Cole County. Thereupon the Chicago & Alton Railway Company appealed to this court.

In its answer before the Commission the Chicago & Alton Railway Company, hereinafter referred to as the appellant, alleged that by virtue of a certain written contract entered into by and between itself and the predecessor of the Missouri, Kansas & Texas Railway Company, the sole cost of construction, maintenance and operation of the interlocking plant should be assessed against the Missouri, Kansas & Texas Railway Company; that to do otherwise would be to im-

pair the obligation of said contract and to take appellant's property without due process of law, all contrary to certain specified sections of both the State and Federal Constitutions.

It appears from the evidence that the appellant is the senior company and was operating a railroad at this point at the time the crossing contract in question was executed in 1892. Those sections of the contract here involved are as follows:

"Third. The said party of the second part [the predecessor of the M. K. & T. Ry. Co.] agrees that it will furnish the materials for and construct and put in all crossing-frogs, crossing-signals, gates and targets and other fixtures necessary to make the crossing with the existing tracks of the party of the first part [appellant herein] at the points aforesaid strictly in accordance with such plans and specifications as shall be prescribed by the chief engineer of the party of the first part, and that the said party of the second part will, at its sole cost and charge, forever maintain and keep in good repair, and renew, from time to time when necessary, all the crossing-frogs, crossing-signals, gates and targets and other fixtures provided for in this indenture, whether of existing tracks or of such as may be hereafter laid by the party of the first part, all in such manner as shall be satisfactory to the said party of the first part. In the event that it does not make all such repairs or renewals when reasonably required so to do, the party of the first part may make the same, and the party of the second part agrees that it will promptly pay the party of the first part the full cost thereof.

"Fourth. *If, at any time hereafter, the business of the party of the first part, or the laws of the State of Missouri or the ordinances of any municipal corporation of said State, shall make it necessary to station flagmen at the said crossings, or shall make it necessary or proper to erect crossing-signals or gates thereat, said party of the first part shall have the right to employ such flagmen and to establish such signals and*

*gates, and the said party of the second part will pay the wages of such flagman or flagmen promptly as the same become due from time to time and the cost of the construction, maintenance and operation of such signals or gates.* Any such flagman or flagmen shall be appointed by said party of the first part, but subject to the approval of the general superintendent or other managing officer of the party of the second part, and the said party of the second part shall have the right to require the discharge of such flagman or flagmen if there be good and sufficient reasons therefor, to be determined by its general superintendent or other proper managing officer, who shall state such reason in writing to the party of the first part, if required.''

Upon the hearing, blue print maps and diagrams of the proposed interlocking plant, together with the engineer's estimate of the cost thereof, were introduced in evidence. No issue is raised as to the merits of the plant which was ordered installed. The evidence shows that this system, to-wit, the Saxby & Farmer Interlocking System, has been in use for about thirty years, how extensively is now shown. It also appears from the evidence that an interlocking system is a greater instrumentality of safety than the method of having gates at crossings or the law requiring trains to stop before passing over crossings; that methods other than the interlocking system depended more upon the human agency; that sometimes engineers in approaching crossings forget to bring their engines in under control, or the gateman sometimes forget to operate the gates, and that sometimes collisions occur at railway crossings; that the mechanism of the interlocking plant is such that when one track is made clear for traffic, derailing switches in the other crossing tracks are automatically operated, thereby making it impossible for trains to meet at such crossings; that the installation of an interlocking plant insures a safe operation of trains at the crossing point. The evidence further tends to show that the interlocking plant is justifiable as a matter of economy. That the cost of carrying the interlocking

investment is less than cost of the train stops required at such points where an interlocking plant is not installed.

Mr. Harrop, the chief engineer of the Public Service Commission, testified that the usual method of apportioning the cost of interlocking plants as promulgated by rule of the Railway Signal Association was upon what is known as the function or unit basis; "that is the number of signals, derails, etc., on different tracks are the units that are made the basis for the apportionment of the cost between the companies."

This witness further testified that the situation at the North Jefferson crossing was such as to require more derails in appellant's tracks than in the tracks of the Missouri, Kansas & Texas Railway. This witness in applying the function basis to the apportionment of the cost stated that it would place against the appellant 57.9% and against the M., K. & T. Ry. Co., 42.1%. This witness further stated that the usual practice in dividing the cost of operation was to divide it equally between the two companies. Mr. W. E. Williams, the general manager of the M., K. & T. Ry. Co., corroborated the testimony of Mr. Harrop as to the usual basis of apportioning the costs of construction and maintenance of an interlocking plant.

The evidence further shows that the M., K. & T. Railway Company averaged sixteen trains per day, and the appellant six trains per day over this crossing; that it was the main line of the M., K. & T. Railway Company, but the branch line of the appellant; that the trains operated over the crossing by the M., K. & T. Railway Company were much longer and heavier than the trains operated by the appellant; that all of the appellant's trains stopped at this crossing for the purpose of taking on or receiving passengers or freight from the connecting line; that the trains of both railroads usually stood on the crossing while unloading passengers and freight at this point; that many of the M., K. & T. trains were through trains and would not

80      SUPREME COURT OF MISSOURI,

State ex rel. C. & A. Ry. Co. v. Public Service Com.

stop at this crossing, but for the state law requiring them to so stop; that an interlocking plant would in many instances remove the necessity of stopping trains before going upon the crossing.

Further necessary reference to evidence will be made in the course of the opinion.

I. Appellant contends that the order of the Public Service Commission in imposing upon it a part of the cost of the construction, maintenance and operation of the interlocking plant impairs the obligation of the crossing contract executed in 1892.

Contract.

In determining the question it is essential that we first examine the contract to see if it places an obligation for the payment of the cost of the construction, maintenance or operation of an interlocking plant. If it does not, then it necessarily follows that the order of the Commission apportioning such cost does not impair any obligation of such contract.

The contract provides: "If, at any time hereafter, the business of the party of the first part [appellant], or the laws of the State of Missouri or the ordinances of any municipal corporation of said State, shall make it necessary to station flagmen at said crossings, or shall make it necessary or proper to erect *crossing-signals or gates* thereat, said party of the first part shall have the right to employ such flagmen and to establish such *signals and gates,* and the said party of the second part will pay the wages of such flagman or flagmen promptly as the same become due from time to time and the cost of the construction, maintenance and operation of such *signals and gates.*" (Italics ours.)

If the term "interlocking plant" is included in the above contract it must be included within the phrase "crossing signals or gates."

We have reached the conclusion that the phrase "crossing signals or gates" as used in the contract can in no proper manner be construed to include "interlocking plants."

VOL. 275,    APRIL TERM, 1918.    81

State ex rel. C. & A. Ry. Co. v. Public Service Com.

This exact point, or at least a point so closely analogous to the one here involved as to supply a valuable precedent in the instant case, was passed upon by the Supreme Court of the United States in the case of Grand Trunk Western Railway Company v. Railroad Commission of Indiana, 221 U. S. 400. In that case in construing a very similar contract the court said:

"The contract is set forth at length in the State court's opinion and need not be reproduced here. It declares explicitly that the duty of constructing and properly maintaining the physical crossing of the two roads and bearing the expense incident thereto, shall rest with the junior road, but its only provision respecting what shall be done in the way of guarding the crossing is that 'good and substantial semaphores or other signals, and . . . the requisite watchmen to take charge of and operate the same,' shall be provided and maintained by that road at its 'individual expense.' There is no reference to an interlocking plant, nor any general language that would include one. The words 'semaphores or other signals' do not do so. An interlocking plant is so much more than a signaling device that it is quite beyond their usual meaning."

Since the contract does not cover the expense imposed it is unnecessary to a determination of this case to decide whether the Public Service Commission in the exercise of the police power of the State can apportion a railway crossing expense contrary to the express terms of a contract. For that reason the latter point is not here further discussed.

II. Appellant makes the further contention that even though the contract be held not to control the situation, yet the order of the Commission, in imposing 28.6% of the cost upon the appellant, is unreasonable and unjust.

Upon the hearing appellant did not offer any evidence concerning the proper items to be considered in apportioning the costs of an interlocking plant. In

275 Mo.—6

its brief it says: "The conditions vary so in crossings that no rule can be established which would be uniform and just."

The only evidence in the record tending to give a basis for apportionment of such expenses (that offered by the respondent company) would, if applied, fix the amount against appellant at 57.9% of the cost of construction and maintenance and 50% of the cost of operation. The order of the Commission apportioned only 28.6% against appellant.

The Commission evidently undertook to apportion the expense on the train basis; e. g., each railway company was assessed an amount in proportion to its share of the average total number of trains using the crossing. In this way the smaller percentage of cost (appellant having the smaller number of trains using the crossing) was assessed against appellant. The respondent railway company, against whom the larger assessment was laid, makes no complaint, so we have not to deal with the larger question of whether the train basis is the proper basis, but only with the question as to whether the order as applied to appellant was unreasonable. Appellant contends that even though the train basis be the proper one, yet the amount assessed against it is too much; that appellant's proportion as fixed by the Commission is erroneous, because in arriving at the percentage the respondent railway company was charged with an average of only fifteen trains per day while the testimony shows the number to be sixteen.

The testimony before the Commission does show that the Missouri, Kansas, and Texas Railway Company averaged sixteen trains daily over this crossing, and if the apportionment was to be determined on the train basis alone it would appear that appellant was assessed approximately $125 too much. But must the apportionment be based upon the train basis alone? There is no basis in this record for such a conclusion. While this record does not fully develop the different items that might be considered in arriving at a proper

basis, yet two items are mentioned, to-wit, (1) economy of crossing operation and (2) safety.

As to the item of economy of operating trains over the crossing it appears from the evidence that by the use of an interlocking plant many trains would be permitted to use the crossing without coming to a stop, as is required under present conditions, thereby saving the cost of stops thus eliminated. If this were the only item it would not perhaps be unjust to apportion the costs to each railroad in the proportion which the amount of money thus saved bore to the total amount thus saved by both railroads.

But can the same be said as to the second item, e. g., safety? It would be difficult to conceive of a collision at the crossing of two railroads unless both railway companies participated therein; that is to say, every time a collision occurs at such a crossing each railway company would have a train or part of a train involved. This being true it would appear that so far as this item is concerned each railroad would share equally in the financial saving resulting from the elimination of crossing collisions.

Without here undertaking to state the true basis for such an apportionment (this because the true solution would no doubt depend upon many items not disclosed by this record, and upon facts the existence of which lie without the range of judicial knowledge) we feel no hesitancy in stating that the present record supplies appellant with no proper basis for complaint.

The judgment is affirmed. All concur.